## HILDEGARD SCHREDER v. RICHARD LITCHY AND ANOTHER.[1]

December 8, 1933.

No. 29,595.

[1]Reported in 251 N. W. 513.

*Atwood & Quinlivan,* for appellant.
*Peter C. Bettendorf* and *R. B. Brower,* for respondent.

*HILTON, Justice.*

Action to recover damages for personal injuries sustained in an automobile accident. A verdict was returned against defendant Adolph J. Landwehr for $5,000 and hospital and doctor expenses. Defendant Litchy was absolved from liability. Defendant Landwehr appeals from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

On August 8, 1931, Hildegard Schreder, the niece of Landwehr's wife, was riding in an automobile owned by Landwehr and being driven by Hildegard's brother Mathew. The accident was due to his negligence. Hildegard was 22 years of age and was a student at St. Benedict's Academy in the village of St. Joseph, preparatory to becoming a nurse and a member of the order. To attain that end a three-year course was necessary. She had completed two years thereof. Landwehr and his family lived in St. Cloud, which is about eight miles from St. Joseph. Both are on paved highway No. 3. Landwehr was president and manager of a dairy company at St. Cloud and the owner of two automobiles, one of which was a Studebaker and used principally for family purposes but occasionally used in connection with the business. It was kept in a garage at Landwehr's residence, as was also his dairy business car. One key to the Studebaker was kept at the residence by Mrs. Landwehr; Landwehr had the other key. The evidence shows that Landwehr had given his wife full authority to secure as a driver at any time some person of her own selection, and that she had on numerous occasions done so, usually selecting one of her nephews, including Mathew.

Hildegard frequently made trips from St. Joseph to St. Cloud, where her mother and stepfather also lived. On some occasions

she made the trip either to or from St. Cloud by bus. Quite frequently she was transported in the car here involved. Sometimes it was driven by Landwehr, once at least by his wife, at other times by one of the nephews, and a week before the accident by Mathew. About 15 such trips were made in the year immediately preceding the accident, about ten of which were made during the summer of 1931. On some of these trips the car was thus used without the then actual knowledge of Landwehr, but he testified that such use had his approval, that any arrangement in that regard made by his wife was all right with him, and that such trips were made so frequently he did not charge his mind with them. Hildegard did not drive a car and had no knowledge concerning car driving.

On her visits to St. Cloud Hildegard generally spent three or four hours at the Landwehr home and sometimes stayed practically all day. On such occasions she assisted in the housework, helping with the dishes, taking care of the children, and other similar work. She never received any compensation for such services. She usually had at least one meal in the Landwehr home.

On the day in question Hildegard went to St. Cloud by bus, intending to and did visit a doctor. She arrived at the Landwehr home about 10:30 in the forenoon. Mrs. Landwehr was ill and in bed. Hildegard, as was customary, worked around the house, cared for the children, and also prepared Mrs. Landwehr's tray for dinner. Mrs. Landwehr had frequently on previous occasions told Hildegard that she need not worry about being back to school on time as she would see to it that she got back and on time; and on such occasions the car and a driver were provided to transport Hildegard to St. Joseph. Such an arrangement permitted a longer visit than if she had to take a bus, which left St. Cloud around 4:00 p. m. Hildegard was required to be back at the school at about 7:30 or 8:00 o'clock in the evening—before dark. On the day of the accident, upon being asked by Mrs. Landwehr how she was returning to St. Joseph, Hildegard answered, "On the bus." Mrs. Landwehr then told her not to worry about getting back, that she would see that she got back and that she would not have to leave so early. She also said to Hildegard, "You tell Mathew to take

you up." Hildegard left the Landwehr home about three o'clock in the afternoon and went to her mother's place. Mathew was also there. After supper that evening Mathew left his mother's house to get the Landwehr car. It is admitted that Mrs. Landwehr then permitted and authorized Mathew to use the automobile to take Hildegard back to St. Joseph. After getting Hildegard, and without deviating from the direct route to St. Joseph, Mathew called for another girl, and then continued on that route. The accident happened shortly thereafter and within the city limits of St. Cloud. Landwehr testified that although he did not know that the car was to be used to transport Hildegard to St. Joseph that evening, it was perfectly all right with him that it be so used; that his wife had control of the car in his absence and might make that arrangement for him.

The automobile was being used for a purpose for which it was provided—the convenience and pleasure of Landwehr and his family. Furnishing the transportation to the niece after she had paid a visit to the Landwehr home, during which she had performed numerous household duties, was clearly a family purpose—a purpose in which Landwehr was interested. He had made it his business to provide the automobile for such purposes. If the driver of the car was the servant of the owner and engaged upon the business of the owner at the time the negligent act was committed, the owner is responsible for injuries to persons or property caused by the driver's negligence in operating it. Kayser v. Van Nest, 125 Minn. 277, 146 N. W. 1091, 51 L.R.A. (N.S.) 970. Under the facts here, the act of the wife in providing a driver was the act of her husband. Mathew, in carrying out the instructions of the wife, was acting as the agent of Landwehr, and the latter was responsible for the injuries sustained by Hildegard caused by the negligence of Mathew. The suggestion by appellant that the car was loaned to Mathew and Hildegard for their own purposes is not sustained by the evidence. The jury was justified in finding that the relationship of master and servant or principal and agent existed between Landwehr and Mathew.

■ The claim is made by appellant that the damages are excessive and appear to have been given under the influence of passion and prejudice. The claim is not well founded. Some of the effects of the accident were objective, others subjective. Hildegard received a heavy blow to the top of her head; the scalp on the left side thereof was rolled up and back free from the skull exposing a curved area eight inches in length, the healing of which resulted in a fixation of a circular portion of the scalp one inch in diameter. She was found unconscious immediately after the accident and so remained for a number of hours at the hospital; she suffered a mild to moderate concussion of the brain; her head continued painful until the time of the trial, 11 months after the injury; she was then unable to turn her head to the right to any great extent; and an attempt to do so caused pains to shoot up through her head and down the back; her vision was affected, which continued for several months but had improved by May the following year; she had dizzy spells which at first prevented her from reading; such spells do not occur so often now; she is very nervous, weak, and unable to do even lighter forms of housework; combined with the dizzy spells, she has headaches lasting usually one day; her left arm and hand do not function normally, feel numb and dead; left leg also becomes numb, causing a limp, partly stiff so she cannot kneel. She received many cuts and bruises to her body, arms, and face; a jagged cut about eight inches in length, extending from her ear down diagonally across her left cheek to a point on the chin below her mouth. The cut penetrated through the cheek, cutting sensory nerves, as a result of which there is an area of numbness and partial paralysis about her mouth. The scar is a great disfigurement and has affected her speech; the left side of her mouth is drawn down. She attempted to resume her school work at the academy but was found to be physically unfit to go on to be received in the order. She was confined to a hospital for ten days and in her mother's home until October 15, 1931.

We have carefully examined the charge of the court and do not find any error therein for which a reversal should be had.

Affirmed.